IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DIVISION OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IMPALA AFRICAN SAFARIS, LLC and<br>ARNOLD PAYNE,<br><br>    Plaintiffs,<br><br>vs.<br><br>DALLAS SAFARI CLUB, INC.,<br>JEROME PHILLIPE FREDERIC LUNG,<br>AFRICA HUNTING, LLC,<br>MICHAEL ARTHUR BURKE,<br>ERIC ALAN HANSHEW,<br>JANE GAYNELLE PIETRANGELO,<br>MARTIN PIETERS,<br>CANDY PIETERS,<br>GENE CAMPBELL,<br>WILLIAM LARRY SHORES, and<br>JOHN DOES 1-10,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO.  3:13-cv-2175 |

**MOTION TO DISMISS CLAIMS
AGAINST WILLIAM LARRY SHORES
FOR LACK OF PERSONAL JURISDICTION, OR
ALTERNATIVELY, FOR FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED AND
<u>MEMORADUM IN SUPPORT THEREOF</u>**

Mark W. Bayer
State Bar No. 01939925
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, TX  75201-4761
214.999.4521
Fax: 214.999.3521
mbayer@gardere.com

William B. Wilson, *pro hac granted*
HOLLAND & KNIGHT LLP
200 S. Orange Ave., Suite 2600
Orlando, FL 32801
407.425.8500
Fax: 407.244.5288
bill.wilson@hklaw.com

Attorneys for Defendant
William Larry Shores

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ...................................................................................... iii

THE COMPLAINT ........................................................................................................1

MEMORANDUM OF LAW ...........................................................................................2

I.    The Complaint should be dismissed against Shores pursuant to Federal Rule of
      Civil Procedure 12(b)(2) because Plaintiffs fail to meet their burden of alleging a
      prima facie case for personal jurisdiction and Shores has not had sufficient
      minimum contacts with Texas to give the Court personal jurisdiction over him. ......2

      A.  Plaintiffs fail to meet the burden of alleging a prima facie case of personal
          jurisdiction over Shores. ...................................................................................2

      B.  There is a lack of general personal jurisdiction over Shores because he does not
          have sufficient minimum contacts with Texas as to not offend traditional notions
          of fair play and substantial justice. ..................................................................2

      C.  There is a lack of specific personal jurisdiction over Shores because his limited
          contacts with Texas do not relate to the claims in the Complaint. .........................5

II.   Plaintiffs fail to comply with the pleading requirements of Federal Rule of Civil
      Procedure 8(a)(2) and thus all counts of the Complaint should be dismissed. ...........8

III.  Plaintiffs have not properly pled any antitrust claim. ..............................................10

      A.  Plaintiffs' Complaint founders on *Twombly*'s rigorous pleading standard. ..........10

      B.  Plaintiffs cannot state an antitrust claim. ........................................................12

          1.  Plaintiffs allege no antitrust injury................................................................12

              a.  Plaintiffs allege only injury to themselves................................................12

              b.  Plaintiffs' allegations of racial animus do not constitute antitrust injury. .13

          2.  Plaintiffs' antitrust claims fail because they have not pled a relevant market.14

              a.  Plaintiffs have not pled and cannot plead a relevant product market. .......14

              b.  Plaintiffs cannot plead a relevant geographic market. ..............................15

              c.  A trade show is not an antitrust "market." ................................................16

          3.  Plaintiffs' specific antitrust theories fail........................................................16

              a.  Limiting access to trade shows is legal....................................................16

              b.  Plaintiffs have not alleged an actionable boycott. ....................................17

              c.  Plaintiffs have not stated a claim for monopolization. .............................18

              d.  Plaintiffs have not stated a claim for attempted monopolization..............19

              e.  Plaintiffs have not stated a claim for conspiracy to monopolize. .............20

      C.  Payne has no standing to bring any antitrust claim...............................................20

          1.  Payne may not recover as a shareholder.......................................................21

2.   Payne may not recover as an officer or employee. ..........................................21

IV.   Plaintiffs' claims for purported violation of Title II of the Civil Rights Act should be dismissed as there is no identification of the place of public accommodation or that Shores is in a position to control it and the injunctive relief available against him would be meaningless. ...............................................................................................22

A.   Plaintiffs fail to identify the requisite place of public accommodation. ...............22

B.   Title II does not provide for liability against individuals like Shores...................23

C.   The injunctive relief provided for under Title II would be meaningless as to Shores.................................................................................................................25

CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Ackel v. Nat'l Commc'ns, Inc.*,
   339 F.3d 376 (5th Cir. 2003) ................................................................................................24

*Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal and Prof'l
   Publ'ns, Inc.*,
   108 F.3d 1147 (9th Cir. 1997) ............................................................................................19

*Apani S.W., Inc. v. Coca-Cola Enters., Inc.*,
   300 F.3d 620 (5th Cir. 2002) ........................................................................................14, 16

*Appleberry v. Fort Worth Indep. Sch. Dist.*,
   No. 4:12-CV-235-A, 2012 WL 5076039 (N.D. Tex. Oct. 17, 2012) ....................................24

*Asevedo v. NBCUniversal Media, LLC*,
   No. 12-2005, 2013 WL 437999 (E.D. La. Feb. 4, 2013).........................................................3

*Baldwin v. Layton*,
   300 Fed.Appx. 321 (5th Cir. 2008).....................................................................................24

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................2, 9, 10, 11, 20

*Berman v. Sink*,
   No. CV F 13-0597 LJO SAB, 2013 WL 2360899 (E.D. Cal. May 29, 2013).........................9

*Bob Maxfield, Inc. v. American Motors Corp.*,
   637 F.2d 1033 (5th Cir. 1981) ............................................................................................16

*Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993)............................................................................................................13

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977)............................................................................................................13

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..............................................................................................................5

*Burstein v. State Bar of Cal.*,
   693 F.2d 511 (5th Cir. 1982) ................................................................................................5

*Calder v. Jones*,
   465 U.S. 783 (1984)..........................................................................................................6, 7

iii

*Casey v. Scott*,
   No. 2:11-CV-580-FTM-29, 2011 WL 5080294 (M.D. Fla. Oct. 25, 2011) ............................9

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) .................................................................................23, 24

*Clemens v. McNamee*,
   615 F.3d 374 (5th Cir. 2010) ...................................................................................5, 6, 7, 8

*Cliff Food Stores, Inc. v. Kroger, Inc.*,
   417 F.2d 203 (5th Cir. 1969) .................................................................................15

*Corr Wireless Commc'ns, L.L.C. v. AT&T, Inc.*,
   907 F. Supp. 2d 793 (N.D. Miss. 2012)..................................................................5

*Cupp v. Alberto-Culver USA, Inc.*,
   310 F. Supp. 2d 963 (W.D. Tenn. 2004).................................................................15

*Doctor's Hosp. of Jefferson, Inc. v. S.E. Med. Alliance Inc.*,
   123 F.3d 301 (5th Cir. 1997) ...............................................................................14, 20

*Duran v. City of Corpus Christi*,
   240 Fed.Appx. 639 (5th Cir. 2007).........................................................................21

*In re Elevator Antitrust Litig.*,
   502 F.3d 47 (2nd Cir. 2007).................................................................................11

*Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*,
   14 F.3d 213 (4th Cir. 1994) ...................................................................................17

*F.D.I.C. v. Thompson & Knight*,
   816 F. Supp. 1123 (N.D. Tex. 1993), *aff'd*, 26 F.3d 1119 (5th Cir. 1994).............................21

*F.T.C. v. Indiana Fed. of Dentists*,
   476 U.S. 447 (1986)..............................................................................................17

*Family Boating Center, Inc. v. Washington Area Marine Dealers Ass'n, Inc.*,
   No. 81-694, 1982 WL 1815 (D.D.C. Feb. 23, 1982).........................................................16, 17

*Fed. Prescription Serv., Inc. v Am. Pharm. Ass'n*,
   663 F.2d 253 (D.C. Cir. 1981), *cert. denied*, 455 U.S. 928 (1982) ........................................11

*Fredericksburg Indus., Inc. v. Franklin Int'l, Inc.*,
   911 S.W.2d 518 (Tex. App.—San Antonio 1995, writ denied).............................................21

*Freudensprung v. Offshore Tech. Serv., Inc.*,
   379 F.3d 327 (5th Cir. 2004) .................................................................................3

iv

*Gauvin v. Trombatore*,
    682 F. Supp. 1067 (N.D. Cal. 1988) .........................................................................................9

*Gregory v. Fort Bridger Rendezvous Ass'n*,
    448 F.3d 1195 (10th Cir. 2006) .......................................................................................16, 17

*Harkins Amusement Enters., Inc. v. Gen. Cinema Corp.*,
    850 F.2d 477 (9th Cir. 1988), *cert. denied*, 488 U.S. 1019 (1989).........................................18

*Healix Infusion Therapy, Inc. v. Helix Health, LLC*,
    No. H-08-0337, 2008 WL 1883546 (S.D. Tex. Apr. 25, 2008)................................................4

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984).............................................................................................................3, 4

*Hornick v. Noyes*,
    708 F.2d 321 (7th Cir. 1983) ...........................................................................................24, 25

*Hunafa v. Silwad*,
    No. 8:12–cv–311–T–33TBM, 2012 WL 1945982 (M.D. Fla. May 10, 2012)........................22

*Johnston v. Multidata Sys. Int'l Corp.*,
    523 F.3d 602 (5th Cir. 2008) ..................................................................................................3

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
    213 F.3d 841 (5th Cir. 2000) ..................................................................................................2

*Kiepfer v. Beller*,
    944 F.2d 1213 (5th Cir. 1991) ..............................................................................................13

*Kramer v. Pollock-Krasner Found.*,
    890 F. Supp. 250 (S.D.N.Y. 1995) ..................................................................................14, 18

*Lone Star Milk Producers, Inc. v. Dairy Farmers of Am., Inc.*,
    No. 5:00-CV-191, 2001 WL 1701532 (E.D. Tex. Jan. 22, 2001) ..........................................14

*Marshall v. Americus-Sumter County Hosp. Auth.*,
    No. 1:01-cv-793, 2002 WL 32173515 (M.D. Ga. Nov. 22, 2002) .........................................13

*Martin B. Glauser Dodge Co. v. Chrysler Corp.*,
    570 F.2d 72 (3rd Cir. 1977), *cert. denied*, 436 U.S. 913 (1978)...........................................12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..............................................................................................................11

*McCoy v. Homestead Studio Suites Hotels*,
    390 F. Supp. 2d 577 (S.D. Tex. 2005) ..................................................................................22

*McDonald v. Bennett,*
    674 F.2d 1080 (5th Cir. 1982), *reh'g granted on other grounds*, 679 F.2d 415
    (5th Cir. 1982)......................................................................................................21

*McGlinchy v. Shell Chem. Co.,*
    845 F.2d 802 (9th Cir. 1988) ...............................................................................12

*Mgmt. Insights, Inc. v. CIC Enters., Inc.,*
    194 F. Supp. 2d 520 (N.D. Tex. 2001) ..................................................................5

*Moncrief Oil Int'l Inc. v. OAO Gazprom,*
    481 F.3d 309 (5th Cir. 2007) .................................................................................3

*New York v. Microsoft Corp.,*
    224 F. Supp. 2d 76 (D.D.C. 2002) .......................................................................19

*Newman v. Piggie Park Enters., Inc.,*
    390 U.S. 400 (1968)..............................................................................................25

*Norris v. Hearst Trust,*
    500 F.3d 454 (5th Cir. 2007) .........................................................................12, 13

*Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n,*
    867 F. Supp. 925 (D. Or. 1994), *aff'd*, 81 F.3d 858 (9th Cir. 1996)......................18

*In re Processed Egg Products Antitrust Litig.,*
    821 F. Supp. 2d 709 (E.D. Pa. 2011) ....................................................................9

*PSKS, Inc. v. Leegin Creative Leather Products, Inc.,*
    615 F.3d 412 (5th Cir. 2010) .......................................................11, 13, 14, 15

*Revell v. Lidov,*
    317 F.3d 467 (5th Cir. 2002) .........................................................................6, 7, 8

*Rose v. Morning Call, Inc.,*
    No. 96-2973, 1997 WL 158397 (E.D. Pa. Mar. 28, 1997) ....................................13

*Smith v. Amedisys Inc.,*
    298 F.3d 434 (5th Cir. 2002) ...............................................................................24

*Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n.,*
    830 F.2d 1374 (7th Cir. 1987) ..............................................................................21

*Star Tobacco, Inc. v. Darilek,*
    298 F. Supp. 2d 436 (E.D. Tex. 2003)..................................................................19

*Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Discount Ctrs., Inc.,*
    200 F.3d 307 (5th Cir. 2000) .........................................................................12, 20

*Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*,
  249 F.3d 413 (5th Cir. 2001) ...................................................................................3

*Suzuki of Western Mass Inc. v. Outdoor Sports Expo, Inc.*,
  126 F. Supp. 2d 40 (D. Mass. 2001) ...............................................................11, 17

*T&T Geotechnical, Inc., v. Union Pac. Res. Co.*,
  944 F. Supp. 1317 (N.D. Tex. 1996) .....................................................................21

*Taffaro v. Peralta*,
  No. 12–2720, 2013 WL 2155657 (E.D. La. May 17, 2013) .....................................9

*Taylor Pub. Co. v. Jostens, Inc.*,
  216 F.3d 465 (5th Cir. 2000) .................................................................................19

*Thompson v. Wise Gen. Hosp.*,
  707 F. Supp. 849 (W.D. Va. 1989) ........................................................................13

*In re Travel Agent Comm'n Antitrust Litig.*,
  583 F.3d 896 (6th Cir. 2009) ...................................................................................9

*TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*,
  964 F.2d 1022 (10th Cir. 1992) ..............................................................................10

*U.S. v. Colgate & Co.*,
  250 U.S. 300 (1919)................................................................................................16

*U.S. v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001), *cert. denied*, 534 U.S. 952 (2001) .........................12

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004)................................................................................................18

*Wampler v. Sw. Bell Tel. Co.*,
  597 F.3d 741 (5th Cir. 2010) .................................................................................16

*Williams v. Le Crewe de Spaniards*,
  No. CA 08–0506–WS–C, 2009 WL 197303 (S.D. Ala. Jan. 6, 2009) ...................22

*Wilson v. Belin*,
  20 F.3d 644 (5th Cir. 1994) .................................................................................4, 5

*Com. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988)...................................................................................17

## STATUTES

42 U.S.C. §§ 2000a - 2000a-5..........................................................................22, 23

42 U.S.C. § 2000e(a)..................................................................................................24

42 U.S.C. § 12111(7) ...............................................................................................24

Clayton Act, 15 U.S.C.A. § 15 ................................................................................10

Sherman Act, 15 U.S.C. § 2.................................................................................12, 18

Sherman Act, 15 U.S.C. § 1.................................................................................12, 10

**OTHER AUTHORITIES**

Fed.R.Civ.P. 8(a)(2)..........................................................................................1, 8, 9, 10

Fed.R.Civ.P. 12(b)(2)................................................................................................1, 2

Fed.R.Civ. P. 12(b)(6).................................................................................................1

Defendant**,** William Larry Shores ("Shores"), pursuant to Fed.R.Civ.P. 12(b)(2) and (6) and 8(a)(2), respectfully moves the Court to dismiss this action against him for lack of personal jurisdiction, or, in the alternative, to dismiss the Complaint for failure to state a claim upon which relief can be granted.

The action should be dismissed for lack of personal jurisdiction because Shores has not had sufficient minimum contacts with Texas to satisfy the due process requirements of the United States Constitution for either general or specific personal jurisdiction.  In the alternative, the Complaint should be dismissed for failure to comply with the requirements of Fed.R.Civ.P. 8(a)(2) because it contains no specific allegations of what Shores did to entitle the Plaintiffs to relief against him and to enable him to respond intelligently to it.  Furthermore, the Motion should be granted with prejudice as to the claims for purported violations of the antitrust laws and Title II of the Civil Rights Act of 1964 because the Plaintiffs cannot state claims under those theories that would entitle them to relief against Shores.

## THE COMPLAINT

In their Complaint, Plaintiffs seek relief against Shores and 19 other defendants (including 10 unidentified "John Does") claiming violations of the Sherman Act and the Clayton Act, violations of Title II of the Civil Rights Act of 1964, business disparagement, defamation, tortious interference with prospective relationships and with existing contracts and intentional infliction of mental anguish.

The only three specific allegations against Shores are: (1) his address for service of process (Complaint ¶ 10); (2) that he is a member of the Dallas Safari Club ("DSC") (Complaint ¶ 15); and (3) that his booking agent is "very close friends with another Zimbabwean rival outfitter" (Complaint ¶ 16).  In all other respects, Shores is lumped in

1

with 19 other persons or entities under the general description of "Defendants."  There are no allegations that address why or how the Court should have personal jurisdiction over Shores.  There are no allegations of anything that Shores specifically did or failed to do that would state a claim to which the Plaintiffs would be entitled to relief against him and, as such, the Complaint should be dismissed.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## MEMORANDUM OF LAW

**I.     The Complaint should be dismissed against Shores pursuant to Federal Rule of Civil Procedure 12(b)(2) because Plaintiffs fail to meet their burden of alleging a prima facie case for personal jurisdiction and Shores has not had sufficient minimum contacts with Texas to give the Court personal jurisdiction over him.**

> **A.     Plaintiffs fail to meet the burden of alleging a prima facie case of personal jurisdiction over Shores.**

Plaintiffs bear the burden of establishing a prima facie case for personal jurisdiction over Shores, a non-resident defendant.[1]  *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000).  They have totally failed to meet this burden.  The Complaint contains no allegations that would support personal jurisdiction over Shores.  In fact, the only allegation pertinent to personal jurisdiction indicates that Shores resides in Florida.  (Complaint ¶ 10).  Indeed, Plaintiffs have not alleged that Shores did anything in Texas.

> **B.     There is a lack of general personal jurisdiction over Shores because he does not have sufficient minimum contacts with Texas as to not offend traditional notions of fair play and substantial justice.**

A federal court may exercise personal jurisdiction over a foreign defendant when:

(1) the long arm statute of the forum state creates personal jurisdiction over the

---

[1] Shores is a resident of Florida.  Shores Affidavit ¶ 2, (attached hereto in the Appendix; App. pp 1-4).

defendant; and (2) the exercise of jurisdiction is consistent with the due process guarantee of the United States Constitution. *Asevedo v. NBCUniversal Media, LLC*, No. 12-2005, 2013 WL 437999, at *3 (E.D. La. Feb. 4, 2013) (citing *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)). Because Texas' long-arm statute reaches to the constitutional limits, the question remaining is whether exercising personal jurisdiction over the defendant offends due process. *Moncrief*, 481 F.3d at 311 n.1.

The Due Process Clause of the Fourteenth Amendment permits a court to exercise jurisdiction over a foreign defendant when: (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Asevedo*, 2013 WL 437999, at *3 (citing *Freudensprung v. Offshore Tech. Serv., Inc.,* 379 F.3d 327, 343 (5th Cir. 2004)). There are two types of minimum contacts: contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction. *Asevedo*, 2013 WL 437999, at *4.

General jurisdiction exists when the defendant's contacts with the forum state are unrelated to the cause of action but are continuous and systematic. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.,* 249 F.3d 413, 419 (5th Cir. 2001)).

Not only is the Complaint devoid of any allegations of personal jurisdiction over Shores, his affidavit shows that he has not purposefully established continuous and systematic contacts with Texas. He lacks sufficient minimum contacts with Texas to support the exercise of general jurisdiction over him. Shores has only been to Texas three times (for a total of six days) during the past five years and he conducts no business in Texas. Shores Affidavit ¶¶ 3, 6 (App. p. 2). These contacts do not amount to continuous and systematic contacts to establish general jurisdiction. *See Helicopteros Nacionales,* 466 U.S. at 411; 414-19 (holding that Texas courts lacked general jurisdiction over a company even though it had purchased several helicopters and more than $4 million in helicopter parts from a Texas company, repeatedly sent company personnel to Texas for training and consultation, and sent its agents to Texas to negotiate contracts); *Wilson v. Belin*, 20 F.3d 644, 649-51 (5th Cir. 1994) (finding that defendant's contacts with Texas were insufficient to subject him to general personal jurisdiction in Texas even though he carried his malpractice insurance through a Texas firm for one year, performed approximately one legal project per year in Texas for three years prior to the institution of the lawsuit against him, served as a pro bono consultant to a historical society in Texas for several years, made two trips to Dallas in the preceding 5 years, wrote a letter to the editor that appeared in a Texas newspaper, wrote a book that was circulated, in part, in Texas, and gave a few interviews to Texas reporters over the years.); *see also Healix Infusion Therapy, Inc. v. Helix Health, LLC,* No. H-08-0337, 2008 WL 1883546 (S.D. Tex. Apr. 25, 2008).

Given the tenuous contacts Shores has with the State of Texas, he could not have reasonably expected to be sued in a Texas court. Subjecting Shores to general personal

jurisdiction in Texas would offend traditional notions of fair play and substantial justice. *Wilson*, 20 F.3d at 650-51.

>    C.    There is a lack of specific personal jurisdiction over Shores because his limited contacts with Texas do not relate to the claims in the Complaint.

Specific jurisdiction exists when the "[non-resident] defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities . . . ." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (citations omitted). "The non-resident's purposefully directed activities in the forum must be such that he could reasonably anticipate being haled into court in the forum state." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (citing *Burger King*, 471 U.S. at 474). The Complaint does not include any allegations supporting a claim of specific jurisdiction.

In fact, none of Shores' contacts with Texas relate in any way to the claims alleged in the Complaint.[2] Shores had contact with Texas on three separate occasions in the past five years. Shores Affidavit ¶ 6 (App. p. 2). In May of 2012, he attended a two day conference on self insurance in San Antonio. *Id.* In January of 2013, he attended the DSC annual meeting in Dallas for two days. *Id.* And in May of 2013, he attended a rifle shooting school for two days in Whitewright. *Id.* On none of these occasions did Shores discuss or mention the Plaintiffs, Impala African Safaris, LLC ("Impala Safaris") or Arnold Payne. *Id.* Shores has never been engaged in the safari business and has never

---

[2] The claims alleged in the Complaint are for Antitrust Violation, Civil Rights Violation under Title II of the Civil Rights Act of 1964, Business Disparagement, Defamation, Tortious Interference with Prospective Relations, Tortious Interference with Existing Contracts, and Mental Anguish. The personal jurisdiction analysis is the same under both the state and statutory causes of action when the language of the statute does not independently confer jurisdiction upon the court. *See Burstein v. State Bar of Cal.*, 693 F.2d 511 (5th Cir. 1982); *Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520 (N.D. Tex. 2001); *Corr Wireless Commc'ns, L.L.C. v. AT&T, Inc.*, 907 F. Supp. 2d 793 (N.D. Miss. 2012).

been a competitor of Plaintiffs. *Id.* at ¶ 4 (App. p. 2). He has never held a position of any authority in the DSC[3] and has had no involvement in or ever ratified any actions of the DSC with respect to Plaintiffs. *Id.* at ¶ 8 (App. pp. 2-3). He was unaware of Mr. Payne's race until the filing of this lawsuit. *Id.* at ¶ 15 (App. p. 4). Therefore, there is no nexus between Shores' contacts with Texas and the claims alleged in the Complaint.

While the analysis above should be sufficient to address the defamation cause of action along with the remaining claims in the Complaint, a more detailed analysis is provided below to comply with the factually intensive analysis employed in defamation cases. *See Calder v. Jones*, 465 U.S. 783 (1984). The Fifth Circuit has similarly engaged in the analysis set forth in *Calder v. Jones*. *See Clemens*, 615 F.3d at 380; *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002).

In *Calder v. Jones*, the Court found that the California Superior Court could properly exercise personal jurisdiction over the non-resident defendants because California was the focal point of the allegedly defamatory article defendants had written and edited and the brunt of the harm was suffered by the plaintiff in California. *Calder*, 465 U.S. at 788-89. Defendants published a story in the National Enquirer, about plaintiff, Shirley Jones, an actress who worked and resided in the State of California. *Id.* at 784-86. The Court found that defendants expressly aimed their conduct towards California as the story they wrote and edited concerned the California activities of a California resident, the article discussed the reputation and professionalism of an entertainer whose career was centered in California, the article was drawn from California sources, and the brunt of the harm was suffered in California. *Id.* at 788-89.

---

[3] DSC, a Texas Corporation, is the only party to this action that is related to Texas.

6

The Court also considered the fact that the National Enquirer had its largest circulation in the State of California. *Id.* at 790.

Although not alleged in the Complaint, Shores assumes that the defamation claim, as it relates to him, concerns an email he authored (the "Shores Email"), and posted on an internet forum named Accurate Reloading ("AR"). Shores Affidavit ¶ 9 (App. p. 3). The circumstances surrounding the writing and posting of the Shores Email are more in line with the facts in *Revell* than with *Calder*. In *Revell*, the Fifth Circuit found that personal jurisdiction over non-resident defendants was lacking on the bases that: (1) the article was written by the defendant contained no reference to Texas; (2) the article did not refer to the Texas activities of the plaintiff; (3) the article was not directed at Texas readers as distinguished from readers in any other state; (4) Texas was not the focal point of the harm suffered; and (5) defendant did not know that the plaintiff was a resident of Texas. *Revell*, 317 F.3d at 473. *See also Clemens*, 615 F.3d at 380 (holding that plaintiff had not made a prima facie showing that defendant made statements in which Texas was the focal point because the allegedly defamatory statements did not concern activities in Texas, they were not made in Texas nor were they directed at Texas residents).

Similarly, in this case, the Shores Email was authored in Florida and sent to a resident of Georgia. Shores Affidavit ¶ 9 (App. p. 3). The sources Shores used to formulate his opinions in the Shores Email were not obtained in or from Texas. *Id.* at ¶ 10 (App. p. 3). Shores posted the Shores Email, from Florida, on the AR forum. *Id.* at ¶ 9 (App. p. 3). AR is an internet forum for members from all over the world that is run out of Dubai. *Id.* The Shores Email was not directed at the residents of Texas any more than it was directed at the residents of any other state or country. *Id.* at ¶ 11 (App. p. 3).

The Shores Email concerned the opinions of Shores regarding the Safari Club International ("SCI"), an Arizona Corporation with its place of business in Arizona. *Id*. at ¶ 12 (App. p. 3). In the Shores Email, Shores referenced a hunt donated by Mr. Payne at an SCI show in Reno, Nevada. *Id*. at ¶ 13 (App. p. 3). He also discussed Mr. Payne's activities in Zimbabwe. *Id*. The Shores Email did not make any reference to Texas or to Mr. Payne's or Impala Safaris' activities in Texas. *Id*. at ¶ 14 (App. p. 3). Mr. Payne is a resident of Arizona and Impala Safaris is an Arizona Corporation with its place of business in Arizona. (Complaint ¶ 13.)

Shores did not purposefully direct his statements in the Shores Email at the State of Texas and Texas is not the focal point of the Shores Email. Therefore, none of the requisite elements to establish personal jurisdiction under the analyses of *Revell* and *Clemens* are present and the defamation claim, as well as the other claims in the Complaint against Shores, should be dismissed for lack of personal jurisdiction.

For the forgoing reasons, the requisite minimum contacts necessary to satisfy the due process requirements for personal jurisdiction over Shores are absent. In no way could he have reasonably anticipated being haled into court in Texas. And it would be unduly expensive and inconvenient for him to be compelled to do so. Shores Affidavit ¶ 17 (App. p. 4). Accordingly, the Complaint should be dismissed for lack of personal jurisdiction.

## II.     Plaintiffs fail to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) and thus all counts of the Complaint should be dismissed.

"A plaintiff suing multiple defendants 'must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations

against them.'" *Berman v. Sink*, No. CV F 13-0597 LJO SAB, 2013 WL 2360899, at *4 (E.D. Cal. May 29, 2013). "Specific identification of the parties to the activities alleged by the plaintiffs is required . . . to enable a defendant to plead intelligently." *Id.*; *see Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (explaining that plaintiff must allege basis of claims against each defendant under Fed.R.Civ.P. 8(a)(2) and not lump them all together); *Taffaro v. Peralta*, No. 12–2720, 2013 WL 2155657, at *13 (E.D. La. May 17, 2013) (explaining that when numerous defendants are collectively implicated in alleged misconduct, the short and plain statement of the claim showing that the pleader is entitled to relief must at least implicate discrete defendants in specific conduct). *See also Casey v. Scott*, No. 2:11-CV-580-FTM-29, 2011 WL 5080294, at *3 (M.D. Fla. Oct. 25, 2011).

"Simply using the global term 'defendants' to apply to numerous parties without any specific allegations that would tie each particular defendant to [a] conspiracy is not sufficient" to plead a claim. *In re Processed Egg Products Antitrust Litig.*, 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011). Here, of course, that's exactly the tack that Plaintiffs take in the Complaint. "However, plaintiffs' reliance on these indeterminate assertions is misplaced because they represent precisely the type of naked conspiratorial allegations rejected by the Supreme Court in *Twombly*." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009).

In the Complaint, Shores is specifically mentioned only three times: the first lists his address for service in Florida (Complaint ¶ 10); the second states that he is a member of DSC (Complaint ¶ 15); and the third states that his booking agent is very close friends with a Zimbabwean outfitter, Buzz Charlton. (Complaint ¶ 16). Shores is not specifically

mentioned elsewhere in the Complaint but is rather lumped in with the other 19 persons or entities under the title "Defendants."[4]   While Shores is accused of violating the Clayton and Sherman Acts and Title II of the Civil Rights Act of 1964, there are no factual allegations of what he specifically did to constitute such violations.  He is accused of making false statements that were disparaging, defamatory, and caused mental anguish without any identification of what he specifically did or said in that regard.  And he is accused of interfering with existing contracts and prospective relationships without any allegation of what he supposedly did to constitute the interference or to identify the contracts or relationships with which he purportedly interfered.  As drafted, it is impossible for Defendant Shores to respond intelligently to any count of the Complaint. Plaintiffs' Complaint, therefore, should be dismissed because it fails to satisfy Fed.R.Civ.P. 8(a)(2).

## III.   Plaintiffs have not properly pled any antitrust claim.

### A.   Plaintiffs' Complaint founders on *Twombly*'s rigorous pleading standard.

Following the Supreme Court's ruling in *Twombly*, an antitrust "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1024-27 (10th Cir. 1992) (declaring that a plaintiff must do more than recite antitrust "buzz words"). Despite these clear dictates, Plaintiffs plead only antitrust buzz words and *no* facts from

---

[4] *See. e.g* ¶ 17("**All of the Defendants** violated the provisions of the Sherman Act, 15 U.S.C.A. §§ 1 *et seq.*, and the Clayton Act, 15 U.S.C.A. § 15, in that they are engaged in a combination and conspiracy to place unlawful restraints on the trade and commerce in offering hunting and photography Zimbabwean African safaris  between several states and territories of the United States."); ¶ 18 ("**Defendants** collectively made false statements…"); ¶ 19 ("**The Defendants** have implemented several techniques to circulate their false statements.").  (Emphasis added).

which one could infer that Shores—who is a *purchaser* of the hunting services at issue—has participated in a conspiracy to reduce competition and thereby raise the prices of services *that he buys*.  Indeed, the only mention of Shores (outside the caption and so forth) in the Complaint is that he is a "member" of the DSC and that his alleged travel "booking agent"[5] is "friends" with a competitor of Plaintiff Impala Safaris, a competitor that is not alleged to be part of the supposed antitrust conspiracy.  This, as *Twombly* teaches, "will not do." *Fed. Prescription Serv., Inc. v Am. Pharm. Ass'n*, 663 F.2d 253, 265-66 (D.C. Cir. 1981), *cert. denied*, 455 U.S. 928 (1982) (providing that mere membership in an association is not enough to establish participation in a conspiracy).

As demonstrated below, these slender allegations fail as a substantive matter, but they suffer a more fundamental flaw as well:  namely, as a matter of pleading they are implausible as indicia of a conspiracy, which is the threshold standard under *Twombly*. *Twombly,* 550 U.S. at 566-70 (concluding that dismissal was warranted because the complaint failed to contain allegations of defendants' action or inaction that made the conspiracy allegations not simply conceivable but actually plausible); *PSKS, Inc. v. Leegin Creative Leather Products, Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (applying *Twombly's* plausibility standard); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 51 n.5 (2nd Cir. 2007) (same).  Here, Shores would have no rational motive to reduce his own market choices or raise the prices he must pay for hunting trips, so Plaintiffs' theory is "one that simply makes no economic sense."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Suzuki of Western Mass Inc. v. Outdoor Sports Expo*, *Inc.*, 126 F. Supp. 2d 40, 47 (D. Mass. 2001) (antitrust claim failed because defendant "had no motive to join . . . in a conspiracy to exclude plaintiff" from a trade show);

---

[5] The Complaint does not identify the travel "booking agent."

*Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Discount Ctrs., Inc.*, 200 F.3d 307, 315 (5th Cir. 2000). In sum, Plaintiffs' Complaint must be dismissed for failure to plead facts from which one could infer the existence of a conspiracy or—even more important—Shores' participation in it.

> B.   Plaintiffs cannot state an antitrust claim.

To state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, Plaintiffs must plead facts supporting "(1) an agreement, conspiracy, or combination among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged (*i.e.*, 'antitrust injury')." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988); *see also Martin B. Glauser Dodge Co. v. Chrysler Corp.*, 570 F.2d 72, 81 (3rd Cir. 1977), *cert. denied*, 436 U.S. 913 (1978). The elements of a monopolization claim under section 2 of the Sherman Act, 15 U.S.C. § 2, are: "(1) the possession of monopoly power in the relevant market and (2) willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *U.S. v. Microsoft Corp.*, 253 F.3d 34, 50 (D.C. Cir. 2001), *cert. denied*, 534 U.S. 952 (2001). Plaintiffs' pleading evinces no factual basis from which one could infer the existence of a violation of either section of the Sherman Act.

> 1.   Plaintiffs allege no antitrust injury.

> a.   *Plaintiffs allege only injury to themselves.*

When a private plaintiff seeks relief under the federal antitrust laws, that plaintiff must plead not only injury to its business or property, but also that the injury is an antitrust injury. *Norris v. Hearst Trust*, 500 F.3d 454, 465 (5th Cir. 2007). An antitrust

injury is an "injury of the type the antitrust laws were intended to prevent," and "should reflect the anticompetitive effect . . . of the violation." *Id.*  This is so because the antitrust laws were designed to protect "competition[,] not competitors." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 488 (1977); *see also Leegin*, 615 F.3d at 419. Accordingly, Plaintiffs here must show not only injury to themselves but injury to competition as well. *Brunswick Corp.*, 429 U.S. at 489.  But Plaintiffs do not plead that the market as a whole (indeed, as we will soon see, they don't even identify the market) has been or will be injured and, thus, they fail to state an antitrust claim. *See, e.g., Kiepfer v. Beller*, 944 F.2d 1213, 1221 (5th Cir. 1991) ("An antitrust plaintiff must show not just that the defendants' action injured him, but that they unreasonably restrained competition.").

        b.    *Plaintiffs' allegations of racial animus do not constitute antitrust injury.*

Courts routinely hold that an "allegedly racially motivated desire to put the plaintiff out of business" cannot save an otherwise defective antitrust claim.[6] *Rose v. Morning Call, Inc.*, No. 96-2973, 1997 WL 158397, at *11 (E.D. Pa. Mar. 28, 1997); *see also Marshall v. Americus-Sumter County Hosp. Auth.*, No. 1:01-cv-793, 2002 WL 32173515 (M.D. Ga. Nov. 22, 2002); *Thompson v. Wise Gen. Hosp.*, 707 F. Supp. 849 (W.D. Va. 1989).  The reasoning is that "[s]uch motive, even if proved, does not constitute an antitrust injury." *Rose,* 1997 WL 158397, at *11.  Here, Plaintiffs have injected the issue of race to scandalize (and disguise the meritless nature of their claims), but that effort falls short as a matter of law for want of an *antitrust* injury.

---

[6] This squares with the more general notion that illicit motives are alone irrelevant to an antitrust claim. *See Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993) ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws. . . .").

       2.       Plaintiffs' antitrust claims fail because they have not pled a relevant market.

"As a prerequisite to any antitrust claim, plaintiff must allege a relevant market in which the anticompetitive effects of the challenged activity can be assessed." *Lone Star Milk Producers, Inc. v. Dairy Farmers of Am., Inc.*, No. 5:00-CV-191, 2001 WL 1701532, at *14 (E.D. Tex. Jan. 22, 2001); *see also Leegin*, 615 F.3d at 417 (to state an antitrust claim the "complaint must plausibly define the relevant product and geographic markets"). "To define a market is to identify producers that provide customers of a defendant firm (or firms) with alternative sources for the defendant's product or services." *Doctor's Hosp. of Jefferson, Inc. v. S.E. Med. Alliance Inc.,* 123 F.3d 301, 311 (5th Cir. 1997). Therefore, a plaintiff must "allege how the net effect of the alleged violation is to restrain trade in the relevant market, and that <u>no reasonable alternative source is available</u> to consumers in that market." *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 254 (S.D.N.Y. 1995) (emphasis in original). For at least three reasons, Plaintiffs cannot make the requisite showing.

       a.       *Plaintiffs have not pled and cannot plead a relevant product market.*

The Fifth Circuit has mandated that—to avoid dismissal of an antitrust claim—a plaintiff must plead a relevant product market and do so in precise economic terms: "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient, and a motion to dismiss may be granted." *Apani S.W., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 628 (5th Cir. 2002); *see also Leegin*, 615 F.3d at 417.

Here, Plaintiffs wholly fail to define the relevant market and certainly do not do so in the manner that the Fifth Circuit requires. But even assuming, *arguendo*, that Plaintiffs are alleging that "the business of arranging safaris hunting and photographic trips (sic) to Zimbabwe" is their "market" in some lay sense, those allegations are insufficient to establish an *antitrust* market because they plainly exclude—without reason— substitutable trips to other places in Africa. Yet to state a claim, they would have to plead facts showing why, say, safaris in Zambia or South Africa are not viable economic substitutes for safaris in Zimbabwe. *See Leegin*, 615 F.3d at 418 (affirming rejection of claim that single brand of products constituted its own market); *see also Cupp v. Alberto-Culver USA, Inc.*, 310 F. Supp. 2d 963, 970-71 n.5 (W.D. Tenn. 2004). As a practical matter, this means that Plaintiffs have not only failed to allege—but also cannot show— that Defendants have market power or the power to monopolize a cognizable market.

As a matter of law, then, Plaintiffs' own pleadings redound against them and sweep them out of court. *See Cliff Food Stores, Inc. v. Kroger, Inc.*, 417 F.2d 203, 207 (5th Cir. 1969) (dismissal appropriate where pleading revealed competitive conditions precluding "the requisite finding that defendant was monopolizing or about to monopolize the relevant market").

b.      *Plaintiffs cannot plead a relevant geographic market.*

Plaintiffs also do not identify a geographic market, and their allegations defeat the possibility of ever doing so. This is so because these allegations are at once too broad and too narrow—too broad because they suggest something global (United States, France, Germany, Spain, Austria, Mexico and Africa), too narrow because they center on access to a single trade show. For reasons discussed immediately below, a single trade show like that sponsored by the DSC cannot be a market, but it is equally true that—once

a plaintiff invokes a geographic region as the area of effective competition—one must consider every possible purchaser within that area. *See Wampler v. Sw. Bell Tel. Co.,* 597 F.3d 741, 745-46 (5th Cir. 2010). Here, of course, there are thousands of possible customers around the world to whom Plaintiffs could peddle their wares, and the attempt to cherry-pick patrons of the Dallas show and label them a "market" is a self-defeating act. *See Apani,* 300 F.3d at 632-33 (focus on 27 purchasers to the exclusion of others in Lubbock, Texas improper). Plaintiffs' alleged geographic market thus fails as a matter of law.

      c.     *A trade show is not an antitrust "market."*

As indicated above, the exercise of defining a relevant market in this case requires the Plaintiffs to consider ***all*** outlets for selling their services. But they don't: they myopically focus on a single outlet, the DSC trade show. It is axiomatic, though, that a trade show is not a "market" for purposes of the Sherman Act. *See Family Boating Center, Inc. v. Washington Area Marine Dealers Ass'n, Inc.*, No. 81-694, 1982 WL 1815, at *4 (D.D.C. Feb. 23, 1982) ("[I]t [is] almost impossible to imagine that this one, small, isolated boat show, and plaintiff's absence from it, could have any *significant* effect whatsoever on the competition among boat dealers in this area."). Accordingly, courts routinely find trade-show exclusion claims meritless under the antitrust laws. *See*, *e.g.*, *Gregory v. Fort Bridger Rendezvous Ass'n*, 448 F.3d 1195 (10th Cir. 2006).

      3.     Plaintiffs' specific antitrust theories fail.

      a.     *Limiting access to trade shows is legal.*

It is a fundamental tenet of antitrust law that an organization may deal with—or refuse to deal with—whomever it chooses. *U.S. v. Colgate & Co.,* 250 U.S. 300, 307 (1919); *see also Bob Maxfield, Inc. v. American Motors Corp.*, 637 F.2d 1033, 1036 (5th

Cir. 1981). Despite this enduring truth, Plaintiffs allege that their exclusion from the DSC show constitutes an antitrust violation. But setting criteria for participation in a trade show (and thereby limiting exhibitors) can have procompetitive consequences by, for example, ensuring "maximum variety" in the types of lines and services displayed to customers. *Suzuki*, 126 F. Supp. 2d at 50. In any event, since the Complaint is devoid of any allegations regarding a relevant product or geographic market, Plaintiffs have failed to plead how their exclusion from the DSC show is an unreasonable restraint of trade.

        b.      *Plaintiffs have not alleged an actionable boycott.*

It is a fundamental tenet of antitrust law that conclusory allegations of a conspiracy are insufficient to state a claim. *See Com. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181-82 (3d Cir. 1988). Thus, "bare bones" allegations of an antitrust conspiracy must be dismissed. *See Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 220-21 (4th Cir. 1994). But even if Plaintiffs' allegations did not fail at this level of generality, they would still fail with respect to the specific theory alleged: namely, "boycott." (Complaint ¶¶ 20-27, 39-43). "Group boycott" is a narrow category of antitrust violation, "limited to cases in which firms with market power boycott suppliers or customers in order to discourage them from doing business with a competitor." *F.T.C. v. Indiana Fed. of Dentists*, 476 U.S. 447, 458 (1986). Here, there is no allegation that Defendants have market power sufficient to coerce anyone from doing business with Plaintiffs. Thus, no good reasons support a departure from the general rule (and attendant holdings) that an exclusion from a trade show is reasonable, justifiable, and not indicative of an illegal boycott. *See Gregory*, 448 F.3d at 1203-4, *Suzuki*, 126 F. Supp. 2d at 48-9, *Family Boating*, 1982 WL 1815, at *3.

c.  *Plaintiffs have not stated a claim for monopolization.*

To maintain a monopolization claim under Section 2 of the Sherman Act, Plaintiffs must demonstrate:  (1) "the possession of monopoly power in the relevant market;" and (2) "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."  *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko*, *LLP,* 540 U.S. 398, 407 (2004).  As demonstrated above, Plaintiffs' monopolization claim is facially defective because Plaintiffs make no allegation of a relevant product market, geographic market, or market power and, thus, cannot assert claims against Defendants for monopolization under the Sherman Act.

Plaintiffs' pleading on this point suffers from a conceptual flaw as well.  "[T]he offense of monopolization under [s]ection 2 refers to market dominance by a 'single firm.'"  *Kramer*, 890 F. Supp. at 256.  Although Plaintiffs' pleading is razor thin (and contradictory) on the point, it appears to allege that Defendants banded together to form a monopoly made up of rival outfitters, the Zimbabwe Professional Hunters Association, and the DSC.  But courts have—with apparent universality—rejected the notion that a group of competitors' combined market power (which Plaintiffs do not trouble themselves to identify on an individual or a group basis) can constitute monopolization, attempted monopolization, or conspiracy to monopolize.  *See id.; see also Harkins Amusement Enters., Inc. v. Gen. Cinema Corp.*, 850 F.2d 477, 490 (9th Cir. 1988), *cert. denied*, 488 U.S. 1019 (1989); *Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n*, 867 F. Supp. 925, 941 (D. Or. 1994), *aff'd*, 81 F.3d 858 (9th Cir. 1996).  Absent any fact-based allegation of monopoly power, Plaintiffs' Section 2 claims should be dismissed.

d.     *Plaintiffs have not stated a claim for attempted monopolization.*

To plead an attempted monopoly under the Sherman Act, a plaintiff must show: (1) a specific intent to monopolize; (2) the defendant has engaged in predatory or anticompetitive conduct; and (3) a dangerous possibility of achieving monopoly power in the relevant market. *Star Tobacco, Inc. v. Darilek*, 298 F. Supp. 2d 436, 447-48 (E.D. Tex. 2003).   As with their claim for monopolization, Plaintiffs' claim for attempted monopolization is facially defective because it fails to identify the existence of a relevant product or geographic market.   More particularly, Plaintiffs have not alleged sufficient facts to establish predatory or anticompetitive conduct, which is defined as actions that independently violate the antitrust laws or that have no legitimate business justification. *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 475 (5th Cir. 2000).

Plaintiffs' antitrust claims are premised on allegations that Defendants attempted to drive them out of business through a series of coordinated, illegal acts that include libel, slander, and business disparagement.   (Complaint ¶¶ 34-38.)   Even accepting these business-tort allegations as true, they do not constitute predatory or anticompetitive conduct that creates a dangerous probability of a monopoly because, as courts have repeatedly held, that type of conduct falls outside the Sherman Act.   *New York v. Microsoft Corp.*, 224 F. Supp. 2d 76, 138-39 (D.D.C. 2002) ("The federal antitrust laws do not create a federal law of unfair competition or purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.   Harm to one or more competitors, *however severe*, is not condemned by the Sherman Act in the absence of harm to the competitive process and thereby harm to consumers."); *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'ns, Inc.*, 108 F.3d 1147,

19

1152 (9th Cir. 1997) (business disparagement claims "should presumptively be ignored" for antitrust purposes). Therefore, Plaintiffs' attempted monopolization claim fails for this reason, as well as for failure to allege a relevant product or geographic market.

> e.   *Plaintiffs have not stated a claim for conspiracy to monopolize.*

To state a claim for conspiracy to monopolize, Plaintiffs must show:  (1) the existence of a specific intent to monopolize; (2) the existence of a conspiracy to achieve that end; and (3) overt acts in furtherance of the conspiracy. *Stewart Glass*, 200 F.3d at 316. Plaintiffs must also plead a relevant market to maintain this claim. *Doctors Hosp. of Jefferson*, 123 F.3d at 311. As demonstrated above, because Plaintiffs have not pled the existence of a relevant market, they cannot maintain a viable claim under the Sherman Act for conspiracy to monopolize. And it's also worth recalling that Plaintiffs have not pled facts suggestive of a conspiracy between Defendants, so the alleged conspiracy to monopolize—as with the "conspiracy" more generally—is not "plausible on its face." *Twombly*, 550 U.S. at 566-70. Moreover, it is particularly implausible that Shores – a <u>consumer</u> – would participate in a conspiracy designed to increase prices or limit competition. Given the facial implausibility of the alleged conspiracy to monopolize, the Court should dismiss Plaintiffs' conspiracy to monopolize allegations as a matter of law.

C.   <u>Payne has no standing to bring any antitrust claim.</u>

The gravamen of Plaintiffs' antitrust claim is that Impala Safaris has or will lose sales in some ill-defined market. As such, Payne's alleged injuries (presumably as an employee or shareholder of Impala Safaris) are derivative of Impala Safari's alleged injuries and thus not actionable under the antitrust laws.

20

1.      Payne may not recover as a shareholder.

An action to redress a corporate injury is vested in the corporation.  Generally, the shareholders of the corporation have no separate and individual right to assert such claims.  *See F.D.I.C. v. Thompson & Knight*, 816 F. Supp. 1123, 1129 (N.D. Tex. 1993), *aff'd*, 26 F.3d 1119 (5th Cir. 1994).  Not even a party who owns a majority of the stock of a corporation or who is a sole shareholder of a corporation can individually bring a cause of action for injuries sustained by or wrongs done to the corporation.  *McDonald v. Bennett,* 674 F.2d 1080, 1086 (5th Cir. 1982), *reh'g granted on other grounds*, 679 F.2d 415 (5th Cir. 1982).

These general principles fully apply to the claims that Payne asserts under the Sherman Act in this case.  Specifically, an owner or shareholder of a corporation does not have standing to bring a claim under the antitrust laws for damages suffered by the corporation.  *T&T Geotechnical, Inc., v. Union Pac. Res. Co.*, 944 F. Supp. 1317, 1322 (N.D. Tex. 1996).  The corporation, not the owner personally, would be the party suffering any antitrust injury for which a suit may be brought.  *Id.*

2.      Payne may not recover as an officer or employee.

Similarly, Payne—as an officer or employee of Impala Safaris—does not have standing to sue for a wrong allegedly done to Impala Safaris.  *Fredericksburg Indus., Inc. v. Franklin Int'l, Inc.,* 911 S.W.2d 518, 521 (Tex. App.—San Antonio 1995, writ denied).  Thus, Payne, as an officer or employee of Impala Safaris, does not have standing personally to maintain a suit against Defendants for alleged antitrust violations committed against his employer, the corporate entity.  *Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n.*, 830 F.2d 1374, 1378 (7th Cir. 1987); *Duran v. City of Corpus Christi*, 240 Fed.Appx. 639, 641-42 (5th Cir. 2007).

IV.     **Plaintiffs' claims for purported violation of Title II of the Civil Rights Act should be dismissed as there is no identification of the place of public accommodation or that Shores is in a position to control it and the injunctive relief available against him would be meaningless.**

A.      Plaintiffs fail to identify the requisite place of public accommodation.

Plaintiffs'[7] claim that Shores violated their rights under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.* ("Title II") is confusing at best.  Title II prohibits discrimination in "any place of public accommodation."  42 U.S.C. § 2000a(a).  In order to state a claim under Title II, Plaintiffs must allege (1) they are members of a protected class; (2) they attempted to exercise their rights to full benefits and enjoyment of a place of public accommodation; (3) they were denied those benefits; and (4) they were treated less favorably than similarly situated persons not of the protected class.  *McCoy v. Homestead Studio Suites Hotels*, 390 F. Supp. 2d 577, 584 (S.D. Tex. 2005).  *See also, Hunafa v. Silwad*, No. 8:12–cv–311–T–33TBM, 2012 WL 1945982, at *2 (M.D. Fla. May 10, 2012).  The Complaint fails to identify the "place of public accommodation" at issue.  This alone results in a failure to state a claim under Title II.  *See Williams v. Le Crewe de Spaniards*, No. CA 08–0506–WS–C, 2009 WL 197303, at *5 (S.D. Ala. Jan. 6, 2009).  Plaintiffs' most specific allegation concerning Title II is that "the defendants have attempted to use race as a means to exclude Arnold Payne from doing business in Zimbabwe and exclude him from trade shows with the Dallas Safari Club."  (Complaint ¶ 29).  Shores presumes that the DSC is the purported place of public accommodation.  But, Title II applies to organizations like the DSC[8] only when they are affiliated with

---

[7] It is difficult to tell from the Complaint whether both Plaintiffs or only Arnold Payne are making this claim.

[8] The DSC may be a "private club" and exempt from Title II.  42 U.S.C. § 2000a(e).  Since Shores only became a member of it in January 2013 and has had no involvement in its governance or operation he lacks sufficient knowledge to raise this point at present.

places open to the public and membership in the organization is necessary to the use of the facility.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 756 (9th Cir. 1994).  Here Plaintiffs do not complain that they have been denied membership in the DSC, rather they allege they have been excluded from trade shows with the Club.  There is, however, no allegation that membership in the DSC is necessary for participation in its shows. Accordingly, the Complaint fails to allege a claim under Title II.

      B.     <u>Title II does not provide for liability against individuals like Shores.</u>

Title II does not include any provision for holding an individual liable.  42 U.S.C. §§ 2000a - 2000a-5.  Title II deals with places of public accommodation.  It was not intended to deal with purported discrimination in every social relationship.  *Clegg*, 18 F.3d at 755.  The only Title II cases Shores has found that impose liability on an individual are those where the person was an owner or operator of a public facility or was personally involved in depriving the plaintiffs of their rights for use of that facility.  His research has located no case in which an individual, like him, who has no position to control the actions of a public accommodation has been deemed a proper party defendant under a Title II claim.  Shores is an individual. He is not a place of public accommodation and he does not own, operate or have the capacity to control a place of public accommodation.  There is no allegation of what Shores did or how he was in a position to do anything with respect to the DSC to exclude Plaintiffs from a DSC trade show.  The only allegation about Shores is that he is a member of the DSC.  Although Title II does use the term "person" in § 2000a-2, "[n]o person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive any person of any right or privilege secured by section 2000a or 2000a-1 of this title . . .", the Act does not define

that term to include individuals similarly situated to Shores, for purposes of the subchapter.

While there is a paucity of authority addressing whether an individual, like Shores, can be liable under Title II,[9] the decisions under Title VII and the Americans with Disabilities Act ("ADA") which have similar definitions of "person"[10] have repeatedly rejected individual liability. *See Smith v. Amedisys Inc.,* 298 F.3d 434, 448 (5th Cir. 2002) ("This circuit has held that there is no individual liability for employees under Title VII."); *Ackel v. Nat'l Commc'ns, Inc.,* 339 F.3d 376, 381 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities."); *Baldwin v. Layton*, 300 Fed.Appx. 321, 323 (5th Cir. 2008) (same); *Appleberry v. Fort Worth Indep. Sch. Dist.*, No. 4:12-CV-235-A, 2012 WL 5076039, at *5 (N.D. Tex. Oct. 17, 2012) ("[C]ourts interpret the ADA consistent with the provisions of Title VII. Given the similarities between the ADA'S definition of 'employer' and that in Title VII, courts that have considered the issue have concluded that, as under Title VII, the ADA does not impose liability against supervisors in their individual capacities."). Thus, even had Congress chosen to add a definition of "person" for purposes of Title II (as it did, for example, with Title VII and the ADA) there still would be no individual liability.

In the present case, Shores is simply a member of the DSC (Complaint ¶ 15). He is not an owner, officer, director or employee of DSC, nor do Plaintiffs allege that he is so in the Complaint. He has held no positions in the DSC other than the membership he

---

[9] In the two cases found dealing with individual defendants like Shores in Title II claims the individuals were dismissed, but the opinions provide no analysis of this issue. *Clegg*, 18 F.3d at 756; *Hornick v. Noyes*, 708 F.2d 321 (7th Cir. 1983).

[10] Title VII defines person to include "one or more individuals." 42 U.S.C. § 2000e(a). The ADA incorporates the definition of "person" under Title VII. 42 U.S.C. § 12111(7).

obtained in January 2013; he has had no authority to act for or on behalf of the DSC and he has never had any involvement in, control over, or influence on the membership requirements or the admission or denial of admission for membership or shows of the DSC. He has never been involved with or ratified any actions of the DSC to prevent Plaintiffs from participating in trade shows. Shores Affidavit ¶ 8 (App. p. 2). He is not an employer for purposes of this action. He is solely an individual and, as such, he is not subject to liability under Title II.

      C.    <u>The injunctive relief provided for under Title II would be meaningless as to Shores.</u>

Under Title II only injunctive relief is available to a prevailing plaintiff. *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400 (1968). Given that Shores is not a "public accommodation" and is not in a position to control or affect a "public accommodation" injunctive relief against him under Title II would be meaningless. *See Hornick v. Noyes*, 708 F.2d at 324 (7th Cir. 1983) (stating in dicta that since only injunctive relief was available under Title II there would be no purpose served by naming the individuals in the complaint in addition to the YWCA.) In sum, there can be no individual liability for Shores under Title II and that claim should be dismissed against him with prejudice.

## CONCLUSION

For the foregoing reasons, Shores requests that the claims against him be dismissed for lack of personal jurisdiction. In the alternative, he requests that the claims against him be dismissed for failure to state a claim.

Respectfully submitted,

GARDERE WYNNE SEWELL LLP


 */s/ Mark W. Bayer*

Mark W. Bayer
State Bar No. 01939925
1601 Elm Street, Suite 3000
Dallas, TX 75201
214.999.4521
Fax: 214.999.3521
mbayer@gardere.com

William B. Wilson, *pro hac granted*
HOLLAND & KNIGHT LLP
200 S. Orange Ave., Suite 2600
Orlando, FL 32801
407.425.8500
Fax: 407.244.5288
bill.wilson@hklaw.com

ATTORNEYS FOR DEFENDANT
WILLIAM LARRY SHORES

**Certificate of Service**

This is to certify that a true and correct copy of the above and foregoing Motion to Dismiss was served through the Court's ECF filing system, on this 12th day of July, 2013, on the following:

Jordyn J. Christian-Gingras
Attorney at law
427 Copeland Drive
Cedar Hill, TX 75104

Dan Krocker
Attorney at Law
710 N. Post Oak Road, Suite 400
Houston, TX 77024

Blake L. Beckham
Sarita A. Smithee
THE BECKHAM GROUP, P.C.
3400 Carlisle, Suite 550
Dallas, TX 75204

*/s/ Mark W. Bayer*
Mark W. Bayer