**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| IMPALA AFRICAN SAFARIS, LLC, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 3:13-CV-2175-G |
| § | |
| DALLAS SAFARI CLUB, INC., et al., § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the order dated October 8, 2013 (doc. 98), this case has been referred for pretrial management. Before the Court is *Dallas Safari Club, Inc.'s Amended FRCP 12(b)(6) and Texas Citizens Participation Act Motion to Dismiss*, filed November 27, 2013 (doc. 159). Based on the relevant filings and applicable law, the defendant's motion should be **GRANTED in part** and **DENIED in part**.

**I. BACKGROUND**

Impala African Safaris, LLC (Impala) is an Arizona corporation "in the business of arranging hunting safari trips to Zimbabwe, Africa[]", and its principal is Arnold Payne (Payne) (collectively Plaintiffs), an Arizona resident. (Docs. 135 at 2.)[1] Dallas Safari Club, Inc. (Defendant) is a "non-profit 501c(4) charitable organization" in Texas. (Doc. 160 at 7.) It hosts, among other things, an annual convention every January where "40,000 attendees can meet and talk with 800 exhibitors including licensed [safari hunting] guides and outfitters, taxidermists, custom firearms manufacturers, wildlife artists, and jewelry exhibitors." (*Id.*) Other defendants have some relation to the African hunting industry as customers or operators. (Docs. 135 at 4; 160 at 7.)

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Plaintiffs allege that some individuals related to safari hunting began a campaign to disparage them by posting negative comments on internet websites that African safari hunters frequent and by directly contacting Plaintiffs' actual and potential clients. (Doc. 135 at 3-4, 14, 23-24, 45-47.) Defendant received the negative reviews from the individuals both directly and indirectly.[2] (*Id.* at 3-4, 24-25, 33, 35, 36, 48.)

In September 2012, Defendant notified Plaintiffs that it was cancelling the booth Plaintiffs had reserved for th 2013 convention and returning their deposit. (Docs. 135 at 5; 179-9 at 2.) Defendant told Plaintiffs that they had to be members of the Zimbabwe Professional Hunters and Guides Association (ZPHGA), the Professional Hunters Association of South Africa, or the Nambia Professional Hunters Association in order to be exhibitors at its convention. (Docs. 135 at 5; 179-9 at 2.) Plaintiffs assert that Defendant is a type of an agent for ZPHGA, and it denied Plaintiffs a booth because ZPHGA wanted to restrain trade of non-white hunting guides to promote white hunting guides and to raise the prices of Zimbabwe hunts. (Doc. 135 at 25, 40.) When Plaintiffs' associate became a member of ZPHGA, Defendant provided Plaintiffs a booth at the 2013 convention. (Doc. 135 at 6.) Defendant, however, declined Plaintiffs' request to be exhibitors at its 2014 convention. (*Id.* at 6-7.) Payne "is the only non-white outfitter operating in Zimbabwe who has had a booth at [Defendant's] trade shows in the past." (Doc. 178 at 6.)

On June 11, 2013, Impala and Payne filed suit against ten named defendants[4] and ten unnamed

---

[2]Plaintiffs also allege that Defendant's members have contacted Plaintiffs' clients to cancel hunting trips, made disparaging remarks, showed favoritism for certain members or exhibitors, and expressed racial prejudice at Defendant's conventions. (Doc. 135 at 7,8, 26-27, 30-31.) They do not allege, however, that the unidentified members were acting on behalf of Defendant. (Id.)

[4]Five of the named individual defendants have now been dismissed. (Docs. 201-203, 206, 209, 212.) Remaining are Jerome Phillipe Frederic Lung, Martin and Candy Pieters, Africa Hunting, LLC, and Defendant.

2

defendants for alleged antitrust violations under the Sherman Act, civil rights violations under Title II of the Civil Rights Act, business disparagement, defamation, tortious interference with prospective contractual relations, tortious interference with existing contracts, and mental anguish. (*See* doc 1.) On October 31, 2013, Plaintiffs filed their first amended complaint, adding a Texas Business Unfair Practices Act claim. (Doc. 135 at 48.)

On November 27, 2013, Defendant filed a motion to dismiss for failure to state a claim. (Doc. 159.) On December 18, 2013, Plaintiffs filed their response (doc. 178) and on January 1, 2014, Defendant filed its reply (doc. 187). The motion is ripe for recommendation.

## II. OBJECTIONS

Defendant raises three objections to Plaintiffs' opposition and attached exhibits: (1) Plaintiffs violated the page limit set by Local Rule 7.2 by incorporating by reference 110 paragraphs from other briefs; (2) Plaintiffs are attempting to turn the motion to dismiss into a motion for summary judgment by submitting 147 pages of affidavits and other evidence with its opposition; and (3) the affidavits and other evidence violate the Federal Rules of Evidence. (Doc. 187 at 3-4.)

**A.     Local Rule 7.2**

Defendant first argues that Plaintiffs' opposition violate Local Rule 7.2 because it limits the length of a brief to not exceed 25 pages. (*Id.* at 3); *see* N.D. Tex. Local R. § 7.2. Plaintiffs' brief is already at the maximum 25 pages without the incorporated paragraphs. (*See* doc. 178.) Incorporating additional 110 paragraphs from Plaintiffs' other briefs would unnecessarily lengthen the brief far beyond the limit. Further, it is unnecessary to consider the referred 110 paragraphs to rule on this motion. Only the facts and issues presented and argued in Plaintiffs' first amended complaint and their opposition will be addressed. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993)

3

("[Plaintiff's] incorporation of arguments from other pleadings would lengthen a brief already at the 50-page limit.  Therefore, only the issues presented and argued in the brief are addressed." (citation omitted)).  Defendant's objection is **SUSTAINED**.

B.     **Federal Rules of Civil Procedure 12(d)**

Next, Defendant objects to Plaintiffs' exhibits in support of their opposition because by submitting the exhibits, Plaintiffs are turning a motion to dismiss into a summary judgment motion. (Doc. 187 at 3-4.)

Plaintiffs filed an appendix with eight affidavits and six other documents.  (*See* docs. 179-1 through 179-14.)  "On a Rule 12(b)(6) motion, a district court generally must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (internal quotation marks omitted); *see* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004).  If a court accepts evidence presented with a motion to dismiss under Rule 12(b)(6), it is then treated as a summary judgment motion. *See* Fed. R. Civ. P. 12(d) ("[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56[.]").

The Fifth Circuit has ruled, however, that courts "may . . . consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings *and* are central to a plaintiff's claims." *Brand Coupon Network, L.L.C.*, 2478 F.3d at 635 (emphasis added); *see* WRIGHT & MILLER § 1357.  Here, no documents were attached to the first amended complaint, but it does refer to a letter from Ben Carter cancelling Plaintiffs' booth at the Defendant's 2013 convention, (Ex. 9, doc. 179-9), as well as the communication regarding the

4

unavailability of a booth at the 2014 convention, (Ex. 10, doc. 179-10).  (Doc. 135 at 5-7.)  As the evidence is central to Plaintiffs' claims against Defendant, it is part of the pleadings that can be reviewed without converting the motion to dismiss into a motion for summary judgment. *See Collins v. Morgan Stanley Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (stating that documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." (internal quotation marks omitted)).  Defendant's objection to exhibits nine and ten are **OVERRULED**.

The following opposition exhibits were not referred to in the first amended complaint: Robert Harris affidavit (Ex. 1, doc. 179-1), Leslie Hope Payne affidavit (Ex. 2, doc. 179-2), Peter Phiri affidavit (Ex. 3, doc. 179-3), Albert Paradzai affidavit (Ex. 4, doc. 179-4), Joe Keathley affidavit (Ex. 5, doc. 179-5), Marlon Smith affidavit (Ex. 6, doc. 179-6), Sterling Foiles affidavit (Ex. 7, doc. 179-7), and document evidence exhibits 11-14 (docs. 179-11 through 179-14).  Payne's affidavit, (Ex. 8, doc. 179-8), was also not referred to in the first amended complaint.  Exhibits 1 through 8 and 11 through 14 will therefore not be considered.  Defendant's objections to these exhibits are **SUSTAINED**.

**C.     Federal Rules of Evidence**

Defendant raises objections under Federal Rules of Evidence 801-803, 901, and 902.  (Doc. 187 at 3-4.)  It did not object specifically to exhibits 9 and 10 as violating the Federal Rules of Evidence, however.  (*Id.*)  They will be considered along with the first amended complaint and Plaintiffs' opposition.  Because the remaining exhibits are not being considered, its objections to those exhibits under Federal Rules of Evidence are **OVERRULED as moot**.

### III. 12(B)(6) MOTION TO DISMISS

Defendant first moves to dismiss Plaintiffs' claims under FED. R. CIV. P. 12(b)(6) for failure

5

to state a claim upon which relief can be granted. (Doc. 160.)

**A.     12(b)(6) Standard**

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert denied*, 530 U.S. 1229 (2000). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim that has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Towmbly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

**B.    The Sherman Act**

Defendant argues that Plaintiffs' contention that Defendant violated §§ 1 and 2 of the Sherman Act when it denied them a booth at its 2014 convention fails to state a claim under the Sherman Act because they failed to allege antitrust injury. (Docs. 135 at 2, 19, 38; 160 at 18; 178 at 14-15.) Because "[a]ntitrust injury is a component of the [antitrust] standing inquiry, not a separate qualification[,]" *Bell v. Dow Chemical Co.*, 847 F.2d 1179, 1182 (5th Cir. 1988), Defendant is challenging Plaintiffs' standing to bring an antitrust claim.[5]

"The Sherman Act makes every contract, combination, or conspiracy in unreasonable restraint of the interstate or foreign commerce illegal." *Hartford Fire Ins., Co. v. California*, 509 U.S. 764, 769 (1993). Section 2 of the Sherman Act also makes any act, attempt, or conspiracy of monopolization illegal. *See Verizon Commc'ms Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004); *Stewart Glass & Mirror v. Auto Discount Ctrs., Inc.*, 200 F.3d 307, 316 (5th Cir. 2000). Before addressing the substantive issues in the Sherman Act claims, however, "we must establish whether plaintiff had standing to maintain this claim under the Sherman Act. The question of standing is a preliminary one, to be answered from examination of the allegations of the complaint." *Transource Int'l, Inc. v. Trinity Indust., Inc.*, 725 F.2d 274, 280 (5th Cir. 1984) (internal quotation

---

[5]Defendant raises the antitrust standing issue as to the § 1 claim only, but antitrust standing must also be established to assert claims under § 2 of the Sherman Act. *See Doctor's Hospital of Jefferson, Inc. v. Southeast Med. Alliance, Inc.*, 123 F.3d 301, 305 (1997) ("Antitrust injury must be established for the plaintiff to have standing under section 1 or section 2 of the Sherman Act. This requirement is inferred from section 4 of the Clayton Act, which affords a remedy to any person injured in his business or property 'by reason of' an intrust violation." (citation omitted)).

marks omitted). Section 4 of the Clayton Act, 15 U.S.C. § 15, enables a private citizen to bring a suit to enforce the Sherman Act. *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992); *Jayco Systems, Inc. v. Savin Business Machines Corp.*, 777 F.2d 306, 313 (5th Cir. 1985). An antitrust plaintiff therefore must have standing under § 4 of the Clayton Act to bring a Sherman Act claim. *Id.*

The Clayton Act allows a plaintiff to sue for treble damages if the plaintiff was "injured in his business or property by reason of anything forbidden in the antitrust laws . . . in any district court of the United States in the district in which the defendant resides . . ." 15 U.S.C. § 15. The elements of antitrust standing are: "1) injury-in-fact, an injury to the plaintiff proximately caused by the defendants' conduct; 2) antitrust injury; and 3) proper plaintiff status, which assures that other parties are not better situated to bring suit." *Doctor's Hospital of Jefferson, Inc. v. Southeast Med. Alliance*, 123 F.3d 301, 305 (5th Cir. 1997).

As to the first element, Plaintiffs assert that they suffered a monthly loss of $45,363 from "the various prohibitions to rent trade show booths, advertise in trade association materials, disparaging remarks, libel, and slander[.]" (Doc. 135 at 45.) Although they frequently lump all of the defendants together to allege antitrust violations, the only specific facts they allege against Defendant is that it received disparaging information about them and denied them a booth at its 2014 convention. (*See id.* at 4, 6-7, 18, 33, 36, 38-40, 47, 49.) Plaintiffs confirm this in their opposition to Defendant's motion. (Doc. 178 at 13-14.) Plaintiffs further clarify that the antitrust claim is based on the problem stemming from the "denial of access to Plaintiffs to the DSC trade show[.]" (*Id.* at 14.) Plaintiffs emphasize that Defendant's annual convention draws as many as 40,000 attendees, and that it has a dominant market position in the United States. (Doc. 135 at 43.) They argue that lack of access to the 2014 convention therefore "will result in a competitive disadvantage." (Doc. 178 at 14.)

Plaintiffs fail to sufficiently allege that Defendant's refusal to accept them as an exhibitor at the 2014 convention proximately caused their injury. At the time they filed their complaint, first amended complaint, and response to Defendant's motion, the 2014 convention had not yet occurred. (*See* doc. 160 at 24 (stating that Defendant's convention was scheduled for January 2014).) No injury stemming from the lack of access to Defendant's 2014 convention could arise prior to the actual convention taking place, and none of Plaintiffs' alleged injuries relate directly to the lack of access to Defendant's 2014 convention. As § 4 of the Clayton Act requires Plaintiffs to show actual injury, *Cargill, Inc. v. Montfort of Colorado, Inc.*, 479 U.S. 104, 111 (1986), they fail to sufficiently allege that they suffered an injury-in-fact, the first element of antitrust standing.[8]

Because Plaintiff fail to sufficiently allege the first element of injury-in-fact, they fail to allege antitrust standing. Plaintiffs lack standing to bring claims under §§ 1 and 2 of the Sherman Act. *See Love Terminal Partners, L.P. v. City of Dallas*, 537 F.Supp.2d 538, 556 (N.D. Tex. 2007) (Fitzwater, C.J.) ("None of these antitrust injuries, however, stems from [defendant's] statement. Even assuming that the statement was the product of an agreement rather than a unilateral action, it could not of itself have deprived Plaintiffs of future profits, nor could it alone have artificially inflated the price of airline tickets in the North Texas region."); *U.S.A. ex rel. Barrett*, 2003 WL 21500400, at *13 ("There is no allegation that [the defendant's] alleged conduct proximately caused injury to [the plaintiff's] business

---

[8]Plaintiffs allege that Defendant sought to increase the minimum price of Zimbabwe hunts by excluding them from the 2014 convention. (Docs. 135 at 43-44; 178 at 15 n. 8.) If Plaintiffs are arguing that declining Plaintiffs a booth at Defendant's 2014 convention alone enabled Defendant to raise the Zimbabwe safari hunting prices in the general safari market prior to the actual convention, they still fail to allege injury. Defendant's higher prices would have made Plaintiffs' lower rate more competitive in the market. *Matsuchita Electric Industrial Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 582-83, 585 n. 8 (1986) ("[R]espondents [cannot] recover damages for any conspiracy by petitioners to charge higher than competitive prices in the . . . market. Such conduct would indeed violate the Sherman Act, but it could not injure respondents: as petitioners' competitors, respondents stand to gain from any conspiracy to raise the market price. . ."; also a competitor "may not complain of conspiracies that . . . set minimum prices at any level.").

or property. For this reason, the first amended complaint fails to demonstrate [the plaintiff's] standing to bring an antitrust cause of action against [the defendant].") Defendant's motion to dismiss the Sherman Act claims should be **GRANTED**.

**C.     Title II of the Civil Rights Act: Public Accommodations**

Defendant moves to dismiss Plaintiffs' claim that it violated Title II of the Civil Rights Act when it denied them a booth at its 2014 convention, contending that Title II does not apply to Plaintiffs, and that they also "failed to state the elements of a prima facie case[]" of discrimination. (Docs. 160 at 20-21; 187 at 7.)

Title II of the Civil Rights Act of 1964 prohibits discrimination in public accommodations and states as following:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

*See* 42 U.S.C. § 2000a. Defendant concedes that its annual convention is a public accommodation. (Doc. 187 at 7.) It argues only that Title II of the Civil Rights Act does not apply to Plaintiffs because they sought to be a vendor rather than an attendee, citing to *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 681 (2001). (*Id.*)

*PGA Tour* involved a lawsuit brought by a golfer under Title III of the Americans with Disabilities Act (ADA) against PGA Tour, Inc. (PGA), challenging its ban on the use of golf carts at its tournaments. *Id.* at 668-69. PGA argued that Title III of the ADA protects only "'clients and customers' seeking to obtain 'goods and services' at places of public accommodation. . . . [and that PGA] operate[d] a 'place of exhibition or entertainment[.]'" *Id.* at 678. It argued that the golf player could not bring a claim under Title III because "a professional golfer such as Martin . . . [was] a

10

provider rather than a consumer of the entertainment that petitioner [sold] to the public." *Id.* The Supreme Court ruled that "[i]f Title III's protected class were limited to 'clients or customers,' it would be entirely appropriate to classify the golfers who pay petitioner $3,000 for the chance to compete . . . as petitioner's clients and customers." *Id.* at 679. Noting that both the spectators and competitors of a place of exhibition or entertainment were protected under Title II of the Civil Rights Act, the Court concluded that they also may not be discriminated on the basis of disability under Title III of the ADA. *PGA Tour, Inc.*, 532 U.S. at 681 (citing to *Daniel v. Paul*, 395 U.S. 298, 306 (1969)). Based on this language in *PGA Tour, Inc.*, Title II of the Civil Rights Act protects not only the attendees, but also the exhibitors. *Id.* Exhibitors at Defendant's conventions, like Plaintiffs, may not be discriminated against on the basis of race, color, religion, or national origin. *See id.*

Defendant further alleges that Plaintiffs failed to allege a prima facie case of discrimination. (Doc. 160 at 20-21.) For Title II cases, the Fifth Circuit has adopted the test for establishing a prima facie case under Title VII. *See Fahim v. Marriott Hotel Serv., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008). Plaintiffs must show the following four elements of a prima facie case of discrimination in public accommodations: "(1) [Plaintiffs are] a member of a protected class; (2) [they] attempted to contract for the services of a public accommodation; (3) [they were] denied those services; and (4) the services were made available to similarly situated persons outside [their] protected class."[9] *Id.*

Plaintiffs allege that Payne is a member of a protected class because he is of mixed race. (Docs. 135 at 5; 178 at 23.) They attempted to obtain a booth at Defendant's 2014 convention, but were unable to do so. (Docs. 135 at 6-7; 178 at 23; 179-10.) Plaintiffs further allege that other

---

[9]The *Fahim* court noted that some courts applied a modified version of the fourth element, i.e., "whether (a) the services were made available to similarly situated persons outside the plaintiff's protected class *or* (b) the plaintiff 'received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.'" *Fahim*, 551 F.3d at 350 n.2.

11

outfitters offering Zimbabwe hunts who are white were permitted booths at the 2014 convention, and that Payne had been the only non-white exhibitor offering Zimbabwe hunts at Defendant's conventions in the past. (Docs. 135 at 12; 178 at 6, 23.) Plaintiffs have alleged enough facts to state a prima facie case of discrimination in the public accommodation. *See Twombly*, 550 U.S. at 570. Defendant's motion to dismiss Title II of the Civil Rights Act claim should be **DENIED**.

D.      **Tortious Interference with Prospective Contractual Relations**[10]

Defendant moves to dismiss Plaintiff's claim that Defendant tortiously interfered with their prospective contractual relations by denying them a booth at its 2014 convention argues on grounds that they fail to allege the elements of a claim. (Doc. 160 at 23.)

As the Fifth Circuit noted, the Texas Supreme Court has not yet clearly established the elements of tortious interference with prospective contractual relations. *See Nano-Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394, 403 (5th Cir. 2008). Texas appellate courts, however, have generally found that the claim requires four elements: "(1) a reasonable probability that the parties would have entered into a business relationship; (2) an independently tortious or unlawful act performed by the defendant that prevented the relationship from occurring, (3) the defendant's conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct; and (4) actual harm or damages suffered by the plaintiff as a result of the defendant's interference." *L-3 Comm. Integrated Sys., L.P. v. Lockheed Martin Corp.*, No. 3:07-CV-0341-B, 2008 WL 4391020, *11 (N.D. Tex. Sept. 29, 2008) (citing *Brown v. Swett & Crawford of Texas, Inc.*, 178 S.W.3d 373, 381-382 (Tex. App-Houston [1st Dist.] 2005, no pet.); *Baty v. Protech Ins. Agency*, 63 S.W.3d 841 (Tex.App.-Houston [14th Dist.] 2001, rev.

---

[10] Plaintiffs added the "Texas Business Unfair Practice Act" in the title of this claim in their first amended complaint, but they make no other reference to it. (Doc. 135 at 48.)

12

den'd)).

Defendant generally challenges Plaintiff's allegations regarding all but the third elements. (Doc. 160 at 23-24.) It argues that Plaintiffs have not specifically identified the prospective contracts they lost, the independently tortious conduct by Defendant, and their actual damages from being excluded from its trade show. (*Id.*) First, Plaintiffs allege that they are "the representative[s] of one of the largest shares of Dangerous Game quota in Zimbabwe[,]" only "[a] few outfitters offer[] their own hunts for Zimbabwe[,]" and the prices of those that offer Zimbabwe hunts are higher than Plaintiffs'. (Doc. 135 at 13-14.) Such facts, taken as true, suggest that Plaintiffs have pled a reasonable probability that some customers for Zimbabwe hunts would enter into a contract with Plaintiffs. *See L-3 Commc'ns Integrated Sys.*, 2008 WL 4391020, at *11 (ruling that with only a few competitors in the market, the plaintiff pled that it was a "likely candidate for any contract[,]" it therefore "pled a reasonable probability that [a customer] would enter into a contract with it[.]"). Second, as Plaintiffs have alleged enough facts to state a discrimination claim in the public accommodation that is plausible on its face, *see supra*, Plaintiffs have sufficiently alleged an independently tortious act of interference that prevented them from developing business relationships. Third, Plaintiffs alleged that Defendant's annual convention attracts over 40,000 attendees and may be the largest African hunting trade show in this country, and that Defendant acted to exclude them for the white outfitters' benefit. It is plausible therefore that Defendant knew if Plaintiffs were not permitted to be an exhibitor at its convention, a substantial harm may occur to them. *See In re Burzynski*, 989 F.2d 733, 739 (5th Cir. 1993) ("In reviewing a 12(b)(6) dismissal, we must assume the allegations are true and affirm the dismissal only if 'it is clear that no relief could be granted under *any set of facts that could be proved consistent with the allegations*." (emphasis original)).

13

Plaintiffs, however, failed to allege sufficient facts in support of the fourth element because at the time they filed their complaint, amended complaint, and an opposition to Defendant's motion to dismiss, they had not yet suffered actual harm resulting from Defendant's denial of a booth space at its 2014 convention. Plaintiffs assert, albeit under the antitrust claim, that the "access problem" stemming from the "denial of access to Plaintiffs to the [Defendant's] trade show *will* result in a competitive disadvantage." (Doc. 178 at 14 (emphasis added).) While it may very well cause a competitive disadvantage, speculation does not satisfy the actual harm requirement. *See e.g., Slaughter-Cooper v. Kelsey Seybold Med. Group P.A.*, 379 F.3d 285, 292 (5th Cir. 2004) (ruling that the harm plaintiff asserted, which had occurred six months after the alleged disparagement, was too speculative to satisfy the higher summary judgment standard). Defendant's motion to dismiss as to the tortious interference with prospective contractual relations claim should be **GRANTED**.

### IV. FEDERAL COMMUNICATIONS DECENCY ACT AND TEXAS CITIZENS PARTICIPATION ACT

Defendant argues that it is immune from liability for any statements posted on Facebook under the Federal Communications Decency Act. (Doc. 160 at 12-13.) It also asserts that Plaintiffs' complaint relates to freedom of speech, which is protected by the Texas Citizens Participation Act. (Doc. 160 at 26-28.)

Plaintiffs admit that their claims against Defendant do not relate to any communications. (Doc. 178 at 12-14, 28.) In fact, they clarify in their opposition that they bring only three claims against Defendant: (1) the Sherman Act antitrust claims; (2) a Title II of the Civil Rights Act claim, and (3) a tortious interference with prospective business relationship claim. (Doc. 178 at 6.) Plaintiffs therefore did not bring the Federal Communications Decency Act and the Texas Citizens Participation Act claims against Defendant. To the extent that Defendant seeks dismissal under the two Acts, they

14

should be **DENIED as moot**.[11]

## V. OPPORTUNITY TO AMEND

Plaintiffs seek leave to amend their first amended complaint if Defendant's motion to dismiss is granted. (Doc. 178 at 30.)

"[I]t is not unusual for plaintiffs who oppose a motion to dismiss to request leave to amend in the event the motion is granted ." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). While a court may deny the motion and dismiss the complaint, "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir.2000) (citation omitted). In other words, "a plaintiff's failure to meet the specific pleading requirements should not automatically or [inflexibly] result in dismissal of the complaint with prejudice." *Id.* Given the consequences of dismissal on the complaint alone, and the preference for adjudication on the merits, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains*, 313 F.3d at 329. "Granting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim." *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977).

Here, Plaintiffs specifically request an opportunity to amend their first amended complaint, and it does not appear that they have pled their best case. They should therefore be accorded an opportunity to amend their complaint to sufficiently state a claim for relief.

---

[11]Defendant's motion to dismiss the tortious interference with existing contract claim should be **DENIED as moot** for the same reason.

## VI. RECOMMENDATION

If Plaintiffs do not file a second amended complaint that states a claim for relief within 14 days for objections to this recommendation, or a deadline otherwise set by the Court, Defendant's 12(b)(6) motion to dismiss **GRANTED in part** and **DENIED in part** and Plaintiffs' §§ 1 and 2 of the Sherman Act claims and tortious interference with prospective contractual relations claim should be **DISMISSED**. If Plaintiffs timely file a second amended complaint, however, the motion to dismiss should be **DENIED as moot**, and the action should be allowed to proceed on the second amended complaint.

**SO RECOMMENDED on this 22nd day of August, 2014.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE